UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONTINENTAL CASUALTY CO., ) | |
| an Illinois corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 C 4228 |
| v. ) | |
| ) | Judge Ruben Castillo |
| LASALLE RE LTD., ) | |
| a Bermuda corporation, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion of Plaintiff Continental Casualty Co. ("Continental") to stay arbitration proceedings commenced by Defendant LaSalle Re Ltd. ("LaSalle"). (R. 23.) For the following reasons, the motion is granted.

## BACKGROUND & PROCEDURAL HISTORY

Continental, an Illinois corporation having its principal place of business in Chicago, and LaSalle, a Bermuda corporation having its principal place of business in Hamilton, Bermuda, were parties to several reinsurance agreements,[1] including one known as "All Classes Excess of Loss Retrocession Agreement No. 8550-98" effective from July 15, 1998 to December 31, 2000 ("Retrocession Agreement"). (R. 22, Am. Compl., Ex. B, Retrocession Agreement; *Id.*, Am.

---

[1] "In essence, reinsurance is insurance for insurance companies." *Continental Cas. Co. v. American Nat. Ins. Co.*, 417 F.3d 727, 728 n. 1 (7th Cir. 2005) (citation omitted). Under the typical reinsurance arrangement, a participant (the "reinsured") transfers ("cedes") its risk on the ceded policies to another participant (the "reinsurer"). This arrangement allows the reinsured to spread its risk of loss. *Id.*

1

Compl. ¶¶ 11-12.) The Retrocession Agreement contained an arbitration clause providing: "Any irreconcilable difference of opinion arising between the Reinsurer [LaSalle] and the Retrocessionaire [Continental] in respect of the Agreement or its validity shall, as a condition precedent to any right of action, be referred to Arbitration. . . ." (*Id.*, Ex. B, Retrocession Agreement, Art. XXX.)

In April 2004, Continental and LaSalle executed a Commutation and Release Agreement ("Commutation Agreement"), purporting to "fully and finally terminate, release, determine and fully and finally settle, commute and extinguish all their respective past, present, and future obligations and liabilities, known and unknown, fixed and contingent, under, arising out of, and/or pursuant to the Reinsurance Agreements and any other agreements relating to or arising out of the Reinsurance Agreements. . . ." (*Id.*, Am. Compl., Ex. A, Commutation Agreement at 1.) The Commutation Agreement did not contain an arbitration clause. (*See id.*)

A dispute subsequently arose between Continental and LaSalle, and on May 31, 2007, LaSalle made a demand for arbitration. (*Id.*, Am. Compl., Ex C, Notice of Request to Arbitrate.) Specifically, LaSalle seeks to collect amounts allegedly owed by Continental for its share of claims LaSalle paid to its cedent, the Hartford Insurance Company of Canada ("Hartford"). (R. 25, Def.'s Opp. to Mot. to Stay at 2.) According to LaSalle's arbitration demand, LaSalle agreed to resinsure Hartford for the period July 15, 1998 to December 31, 2000. (R. 22, Am. Compl., Ex. C, Notice of Request to Arbitrate.) Their agreement covered six excess of loss layers; LaSalle assumed 55 percent of the first two layers and various percentages of the upper layers. (*Id.*) The reinsurance program was fronted by LaSalle and was retroceded to several reinsurers,

2

including Continental's affiliate, The Niagara Fire Insurance Company ("Niagara Fire").[2] (*Id.*) The program was administered by Aon Re Canada Inc. ("Aon"). (*Id.*)

According to LaSalle, prior to April 27, 2004, certain claims from Hartford were reported to Niagara Fire by Aon. (*Id.*) LaSalle alleges that it did not receive notice of the claims prior to the date the Commutation Agreement was executed, and that it was otherwise unaware of the Hartford claims, since all notices and accounting were being handled between Aon and Niagara Fire. (*Id.*) According to LaSalle, Niagara Fire would not pay any portion of the Hartford claims, instead asserting that it is not responsible for payment by virtue of the Commutation Agreement. (*Id.*) LaSalle disputes this, alleging that "there was no intent by LaSalle in the Commutation Agreement to release Niagara Fire from its ongoing liability for Hartford claims under the fronting program." (R. 22, Am. Compl., Ex C, Notice of Request to Arbitrate at 2.) LaSalle demanded arbitration to settle that dispute. (*Id.*)

On July 25, 2007, Continental filed an action in the Circuit Court of Cook County seeking a declaration of its rights and obligations under the Commutation Agreement. (R. 1, Notice of Removal, Ex. A, Continental's State Compl.) Specifically, Continental claimed that the Commutation Agreement extinguished all of its obligations under the Retrocession Agreement, including its duty to arbitrate disputes, and that LaSalle's demand for arbitration was therefore improper. (*Id.* ¶¶ 1-8.) Continental further alleged that it was not liable for any of the Hartford claims referenced in the arbitration demand under the express terms of the

---

[2] Pursuant to an Assumption Reinsurance Agreement dated December 21, 2001, Continental succeeded to all of the rights and obligations of Niagara Fire associated with Niagara Fire's business in Canada. (R. 26-2, Pl.'s Reply, Ex. A, Morris Aff. ¶ 2.) Niagara Fire ceased to have any independent legal existence as of December 31, 2006. (*Id.*)

3

Commutation Agreement. (*Id.* ¶¶ 8, 16-25.) On July 26, 2007, LaSalle removed the case to federal court based on diversity jurisdiction, where it was assigned to this Court.[3] (R. 1, Notice of Removal.)

Continental thereafter filed an Amended Complaint for Declaratory Judgment, to Stay Arbitration and For Other Relief. (R. 22, Am. Compl.) In its Amended Complaint, Continental seeks: a declaration that LaSalle's underlying claims regarding the Hartford funds are barred by the terms of the Commutation Agreement; entry of an order indefinitely staying and enjoining the arbitration proceeding; and entry of an award of damages for LaSalle's alleged breach of the Commutation Agreement, including reasonable attorneys' fees. (R. 22, Am. Compl. at 8-9.) Along with the Amended Complaint, Continental filed this motion for a stay of the arbitration proceeding initiated by LaSalle. (R. 23, Pl.'s Mot. to Stay at ¶¶ 3-4.)

## ANALYSIS

The Federal Arbitration Act ("FAA") embodies a federal policy favoring enforcement of arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The FAA provides that an arbitration clause in a contract involving a commercial transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been

---

[3] On August 7, 2007, this Court denied Continental's motion to remand the case to state court. (*See* R. 20, Mem. Opinion & Order.) The Court also previously suspended the deadlines for selection of an umpire in the arbitration proceeding pending further court order. (R. 14, Minute Order.)

4

had in accordance with the terms of the agreement." 9 U.S.C. § 3. In deciding whether a dispute must be submitted to arbitration, any doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

However, as with any other contract, the parties' intentions control. *Id.* at 24. "[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-49 (1986). Thus, an arbitration clause cannot be enforced against a party who has not agreed to arbitrate. *Id.*; *Gibson v. Neigh. Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997). In deciding whether the parties agreed to arbitrate, courts apply state contract law governing the formation of contracts. *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005); *Hawkins v. Aid Assoc. for Lutherans*, 338 F.3d 801, 806 (7th Cir. 2003). Illinois law applies here.[4] (R. 22, Am. Compl., Ex. A, Commutation Agreement, Art. 11(g) ("This Agreement shall be governed by and construed in accordance with the laws of Illinois without regard to principles of conflicts of law.").

Under Illinois law, the Court must interpret the language of the contract in accordance with its plain meaning and must construe the contract as a whole. *Brooklyn Bagel Boys, Inc. v.*

---

[4] Plaintiff asserts that Illinois law applies based on the choice of law provision contained in the Commutation Agreement. (*See* R. 23, Pl.'s Mot. to Stay ¶ 5.) In its opposition to the motion, Defendant does not dispute this assertion but does not directly address whether the law of Illinois or some other jurisdiction applies. (*See* R. 25, Def.'s Opp. to Mot. to Stay.) Defendant cites some Illinois cases (and federal cases interpreting Illinois law), but also cites cases from other jurisdictions, without any delineation of which cases are controlling. (*See id.* at 4-7.) Nevertheless, the Court applies Illinois law because, as discussed below, the Commutation Agreement is the operable agreement governing the parties' dispute. The Court notes that the principles of contract construction discussed herein are not unique to Illinois but are "matters of hornbook law." *See James.*, 417 F.3d at 677.

*Earthgrain Ref. Dough Prod., Inc.*, 212 F.3d 373, 378 (7th Cir. 2000) (interpreting Illinois law); *William Blair & Co., LLC v. FI Liquid. Corp.*, 830 N.E.2d 760, 770 (Ill. App. Ct. 2005). The Court also must ascertain and give effect to the intent of the parties. *W.W. Vincent and Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 966 (Ill. Ct. App. 2004). A written contract is presumed to speak the intention of the parties who signed it, and their intentions must be determined from the language used. *Id.* Additionally, "a court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included." *Gallagher v. Lenart*, 854 N.E.2d 800, 807 (Ill. App. Ct. 2006). A presumption exists against provisions that easily could have been included in the contract but were not. *Id.* Further, where a contract purports on its face to be a complete expression of the parties' entire agreement, courts will not add another term about which the agreement is silent. *Id.* The Court's analysis begins with the language of the contract itself, and "[i]f the language unambiguously answers the question at issue, the inquiry is over." *Emergency Med. Care, Inc. v. Marion Med. Hosp.*, 94 F.3d 1059, 1060-61 (7th Cir. 1996) (interpreting Illinois law).

The Court turns, then, to the express language of the Commutation Agreement. The Commutation Agreement stated, "The Parties now wish to fully and finally terminate, release, determine and fully and finally settle, commute and extinguish *all their respective past, present, and future obligations and liabilities,* known and unknown, fixed and contingent, under, arising out of, and/or pursuant to the Reinsurance Agreements and any other agreements relating

to or arising out of the Reinsurance Agreements. . . ." (R. 22, Am. Compl., Ex. A, Commutation Agreement at 1-2) (emphasis added). To that end, the Commutation Agreement provided that each company "irrevocably and unconditionally releases and forever discharges" the other company, as well as "its parents, subsidiaries and affiliates," from:

> all past, present and future actions, causes of action, suits, *arbitrations,* mediations, debts, liens, contracts, rights, agreements, obligations, promises, liabilities, claims, demands, damages, controversies, losses, costs and expenses. . . of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, which [each company] now has, owns, holds or claims to have, own, or hold, or at any time heretofore had, owned, or held or claimed to have had, owned, or held, or may hereafter have, own, or hold or claim to have, own, or hold, arising out of conduct or matters occurring prior to, on or subsequent to the EFFECTIVE DATE. . . arising from, based upon, or in any way related to the Reinsurance Agreements and any other agreements relating to or arising out of the Reinsurance Agreements. . . .

(*Id.*, Art. 2(a)-(b)) (emphasis added). The Commutation Agreement further provided, "This Agreement sets forth the entire agreement between the Parties with respect to the subject matter hereof and *supersedes all prior agreements* or understanding between them pertaining to the subject matter hereof." (*Id.*, Art. 11(b)) (emphasis added).

The Court agrees with Continental that it would be difficult to envision a more clear statement of the parties' intent to extinguish their obligations under the Retrocession Agreement. The parties could have included an arbitration clause in the Commutation Agreement, but they chose not to do so. Based on the clear language of the Commutation Agreement, the Court finds that the parties intended to extinguish their duty to arbitrate.

The Illinois appellate court addressed a similar set of facts in *Acme-Wiley Holdings, Inc. v. Buck*, 799 N.E.2d 337, 344 (Ill. App. Ct. 2003), which also involved two contracts between the

7

same parties, an original agreement containing an arbitration clause and a release agreement that did not contain an arbitration clause. *Id.* The release agreement contained "clear and unambiguous" language demonstrating the parties' intent to extinguish the original agreement, and also contained a merger clause indicating that the release agreement constituted the entire agreement of the parties and superseded all prior agreements. *Id.* Based on the language of the release agreement, the Court concluded, "[W]e are at a loss as to how we might interpret it to mean anything other than that the original employment agreement was to be regarded as history." *Id.* The clear and unambiguous language of the Commutation Agreement compels the same conclusion here.[5]

LaSalle argues that because Continental is essentially challenging the "validity" of the Retrocession Agreement, the matter must be submitted to arbitration pursuant to the terms of that agreement. (R. 25, Def.'s Opp. to Mot. at 3.) We find this argument unpersuasive. As the Seventh Circuit has explained, when there are successive contracts between the same parties, the earlier contract containing an arbitration clause, a determination of whether a dispute must be arbitrated "turns not on the validity of the [first agreement] but on whether a subsequent transaction nullified the agreement." *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 872 (7th Cir. 1985). Similarly, here, the dispute between the parties is not whether the Retrocession Agreement was valid when executed but, more specifically, whether the parties' subsequent

---

[5] As further evidence of the parties' intent to extinguish their duty to arbitrate, the Commutation Agreement contains a forum selection clause which provides: "The Parties hereby consent to jurisdiction of the courts of the State of Illinois, in connection with any legal action arising out of this Agreement." (R. 22, Am. Compl., Ex. A, Commutation Agreement, Art. 11(h)). Although the Court previously ruled that this clause does not require the parties to resolve their disputes in state—as opposed to federal—court, the clause does evidence an intent by the parties to resolve their disputes in *court*, rather than at arbitration.

8

agreement extinguished their obligations under the Retrocession Agreement. (*See* R. 22, Am. Compl., Ex C, Notice of Request to Arbitrate at 2.) As this Court views it, this is not a challenge to the "validity" of the Retrocession Agreement.

LaSalle's argument is analogous to an argument rejected by the Seventh Circuit in *Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 307 F.3d 601, 604 (7th Cir. 2002), which also involved two separate contracts between the same parties, the first containing an arbitration clause. The plaintiff, Nissan, characterized defendant's argument that the earlier contract was no longer in effect due to the existence of the second contract as essentially a "defense to enforcement" of the first contract, which had to be submitted to arbitration. *Id.* The Seventh Circuit rejected this argument, observing:

> Nissan's position would make the contractual obligation to arbitrate limitless; once two parties entered a fixed-term contract with an arbitration clause, any later dispute between the parties would be presumed arbitrable, with all disputes going to the arbitrator under the guise of 'defenses to enforcement.' Parties would thus be forced to commit to the arbitrator even questions they never intended to arbitrate.

*Id.* at 604. For these same reasons, this Court rejects LaSalle's argument.

LaSalle also suggests that the entire matter of arbitrability, and the determination of which contract controls, must be submitted to the arbitrator. (*See* R. 25, Def.'s Opp. to Mot. at 7-9.) In support, LaSalle relies on cases in which courts concluded that procedural questions pertaining to an arbitration must be left to the arbitrator. *See, e.g., Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (determination of what kind of arbitration parties agreed to is procedural matter for arbitrator); *Employers Ins. Co. of Wausau v. Century Indemn. Co.*, 443 F.3d 573 (7th Cir. 2006) (whether arbitration agreement forbids consolidated arbitration is a

9

procedural one which the arbitrator must resolve). Here the dispute is not over a procedural matter pertaining to the arbitration but over whether there is a valid arbitration clause existing between the parties; this is a "gateway" matter that must be decided by the Court. *See Green Tree Fin. Corp.*, 475 U.S. at 649 ("gateway" matters, such as whether the parties have a valid arbitration agreement at all, must be determined by the court).

The Seventh Circuit has held that where there are multiple contracts between the parties and there is a question as to the parties' intent, it is for the district court, not the arbitrator, to decide whether the earlier arbitration clause has been superseded by a subsequent agreement. *Matterhorn, Inc.*, 763 F.2d at 873; *see also Great Am. Trading Corp. v. I.C.P. Cocoa, Inc.*, 629 F.2d 1282, 1288 (7th Cir. 1980) (whether parties intended to supersede contract containing an arbitration clause was matter for court, not arbitrator, to decide). This Court must therefore make the determination as to whether the parties are bound by the arbitration clause contained in the Retrocession Agreement.[6]

Based on the clear and unambiguous language of the Commutation Agreement, the Court concludes that no agreement to arbitrate exists between the parties. Therefore, Continental cannot be compelled to arbitrate the dispute over the Hartford claims.

---

[6] The Court finds unavailing LaSalle's citation to *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp.2d 850 (N.D. Ill. 2007), since in that case the issue was whether a particular dispute fell within the scope of an arbitration clause that the parties agreed was binding, not whether a valid arbitration clause exists at all. Also unhelpful is LaSalle's citation to *Continental Ins. Co. v. Allianz Ins. Co.*, No. 00cv4548, 2001 WL 289959 (S.D.N.Y. Mar. 23, 2001), which did not involve the same type of general release at issue in this case. (*See* R. 26, Pl.'s Reply at 5-6.)

## CONCLUSION

Continental's motion to stay (R. 23) is granted, and the pending arbitration is stayed. The Clerk of the Court is directed to enter declaratory judgment in favor of Plaintiff Continental to the extent stated in this opinion.

Entered:

Judge Ruben Castillo
United States District Court

**Dated: September 21, 2007**